UNITED STATES DISTRICT COURT

DISTRICT OF NEW HAMPSHIRE

Emseal Joint Systems, Ltd.,
     Plaintiff

     v.                                    Case No. 14-cv-358-SM
                                           Opinion No. 2015 DNH 066
Schul International Co., LLC;
Steven R. Robinson; Brian J. Iske;
Willseal, LLC; and Ion Management, LLC,
     Defendants

**O R D E R**

     Plaintiff, Emseal Joint Systems, Ltd., brings this
consolidated action for patent infringement against Schul
International Co., LLC, Willseal, LLC, Ion Management, LLC, and
their principals, Brian Iske and Steven Robinson.  The patent at
issue - U.S. Patent No. 8,739,495 ("the '495 patent") - teaches a
"fire and water resistant expansion joint system."  It contains
three independent claims and 34 dependent claims.  See
Consolidated Complaint, Exhibit A, The '495 Patent (document no.
32-1).

     Defendants move the court to stay all proceedings in this
action, pending resolution of an ongoing reexamination of the
'495 patent by the United States Patent and Trademark Office
(USPTO).  Plaintiff objects.  For the reasons discussed,
defendants' motion to stay is granted, subject to plaintiff's

right to move the court to lift that stay if the USPTO has not completed its review within six months.

## Background

The '495 patent issued on June 3, 2014.  In August of 2014, Emseal brought suit against Willseal, Ion Management, Brian Iske, and Steven Robinson alleging that they infringed the '495 patent, engaged in unfair and deceptive trade practices in violation of state law, and were unjustly enriched at Emseal's expense.  Civil Action No. 14-cv-359-PB.  Subsequently, that action was consolidated with this one, which involves substantially similar claims against Schul International and Steven Robinson.  On November 25, 2014, Emseal filed a Consolidated Complaint (document no. 32), essentially restating its claims that defendants: infringed the '495 patent (count one); engaged in unfair and deceptive trade practices by selling products that infringe the '495 patent (count two); and were unjustly enriched by such unlawful conduct (count three).  The validity of the '495 patent is, therefore, critical to all three claims.

On November 10, 2014, Schul submitted a Request for Ex Parte Reexamination of the '495 patent to the USPTO.  See 37 C.F.R. § 1.510.  In December, the USPTO granted that request, concluding that it raises ten "substantial new questions of patentability"

affecting all 37 claims of the '495 patent.   Order Granting
Request for Ex Parte Reexamination (document no. 41-1) at 2.
Defendants' move the court to stay this litigation pending
resolution of the USPTO's reexamination of the '495 patent.
Emseal objects.

### Standard of Review

The commencement of a reexamination proceeding does not
automatically stay pending patent litigation.   See, e.g.,
Soverain Software LLC v. Amazon.com, Inc., 356 F. Supp. 2d 660,
662-63 (E.D. Tex. 2005) (noting that there is no "per se rule
that patent cases should be stayed during reexamination because
some of the relevant claims may be affected.  To do so would not
promote the efficient and timely resolution of patent cases, but
would invite parties to unilaterally derail timely patent case
resolution by seeking reexamination.").   Nevertheless, district
court's have the inherent authority to manage their dockets,
including the power to stay proceedings when, in the court's
exercise of its discretion, it deems such a stay appropriate.
See, e.g., Clinton v. Jones, 520 U.S. 681, 706 (1997) ("The
District Court has broad discretion to stay proceedings as an
incident to its power to control its own docket.").   See also
Landis v. N. Am. Co., 299 U.S. 248, 254-55 (1936).  As the moving

parties, defendants bear the burden of showing that a stay is appropriate.

When, as here, the USPTO has determined that a request for reexamination raises one or more substantial new questions of patentability, the argument in favor of a stay becomes more compelling.  See, e.g., VirtualAgility Inc. v. Salesforce.com, Inc., 759 F.3d 1307, 1316 (Fed. Cir. 2014) ("no doubt the case for a stay is stronger after post-grant review has been instituted").  See also Advanced Micro Devices, Inc. v. LG Electronics, Inc., 2015 WL 545534, *2 (N.D. Cal. 2015) ("There is a liberal policy in favor of granting motions to stay proceedings pending the outcome of USPTO reexamination or reissuance proceedings.  This policy stems from recognition that granting a stay can avoid inconsistent results, narrow the issues, obtain guidance from the PTO, or simply avoid the needless waste of judicial resources, especially if the evidence suggests that the patents-in-suit will not survive reexamination.") (citations and internal punctuation omitted).

In determining whether it is appropriate to stay litigation pending patent reexamination, courts typically consider three factors: (1) whether a stay will unduly prejudice or tactically disadvantage the nonmoving party; (2) whether a stay will

4

simplify the issues in question and streamline trial of the case;
and (3) whether the case is at an early stage, including whether
discovery is complete and whether a trial date has been set.  See
CANVS Corp. v. United States, 118 Fed. Cl. 587, 591-92 (2014)
(collecting cases).

**Discussion**

In support of its argument that the court should not stay
these proceedings, Emseal asserts that any delay in litigating
its claims would put it at a substantial tactical disadvantage.
Specifically, it says a stay would: (1) delay its ability to
exclude defendants from producing and marketing (allegedly)
infringing products; (2) delay discovery in this matter, leading
to the potential loss of essential materials and/or testimony;
(3) "avoid" a hearing on its motion to dismiss various
counterclaims asserted by defendants and "deprive" it the
opportunity to defend itself against defendants' counterclaims;
and (4) afford defendants the benefit of a "lower standard of
proof (preponderance of evidence) before the USPTO than the
higher standard of proof (clear and convincing) before the
Court."  Plaintiff's Memorandum (document no. 34-1) at 3.  None
of those arguments is persuasive.

First, while there may well be some delay in Emseal's ability to preclude defendants from selling infringing products (assuming, of course, that the '495 patent is valid and defendants' products actually infringe), Emseal has not sought a temporary restraining order, nor has it moved for preliminary injunctive relief.  Such choices imply that Emseal has been content to let this litigation proceed to its conclusion and, should it prevail, that monetary damages will be sufficient to make it whole.  <u>See generally</u> <u>Procter & Gamble Co. v. Kraft Foods Global, Inc.</u>, 549 F.3d 842, 850 (Fed. Cir. 2008) (counseling against issuance of a stay if the court has already granted a party's request for preliminary injunctive relief).

Second, while a stay will obviously delay discovery, Emseal fails to show how it will be prejudiced by such a delay. Moreover, Emseal is incorrect in asserting that a stay will prevent the court from addressing its pending motions to dismiss various counterclaims advanced by defendants.  It will not. Assuming the '495 patent survives reexamination, the court will have ample opportunity to resolve those motions.

Finally, Emseal's argument that a stay will deprive it of the more favorable standard of review applicable in this court is misplaced.  While it is certainly true that the '495 patent is

entitled to a presumption of validity in this forum, that is of
little moment.  Whether this court grants a stay or not, should
the USPTO invalidate that patent, all of the claims advanced in
Emseal's consolidated complaint will be foreclosed, as each
relies upon defendants having unlawfully infringed Emseal's
intellectual property rights, as embodied in the '495 patent.

     Considering the totality of the circumstances presented in
this case, the court is persuaded that, on balance, the factors
discussed above counsel in favor of granting a limited stay.
Emseal has not shown that it will be unduly prejudiced or
tactically disadvantaged if the court stays this proceeding.  Of
course the stay can be limited in duration, thereby minimizing
the risk, to all parties, that memories of relevant witnesses may
fade, or that critical documents might somehow be lost.
Additionally, if the patent is deemed valid, the court will
benefit from the USPTO's special expertise and evaluation of the
relevant prior art.  If, on the other hand, the '495 patent is
deemed invalid, each of Emseal's three claims will be foreclosed,
as they all turn on defendants' alleged unlawful sale of
infringing goods.

     Plainly, then, regardless of the outcome of the USPTO's
reexamination process, allowing that process to run its course –

assuming that happens in a reasonably timely manner - will assist the court, simplify the issues in question, and streamline trial of the case.  See <u>Cygnus Telecomms. Tech., LLC v. United World Telecom., L.C.</u>, 385 F. Supp. 2d 1022, 1023 (N.D. Cal. 2005) ("A stay is particularly justified where the outcome of the reexamination would be likely to assist the court in determining patent validity and, if the claims were canceled in the reexamination, would eliminate the need to try the infringement issue.").  As the Court of Appeals for the Federal Circuit has observed:

> The present stay has thus not terminated the action but has merely shifted to the PTO an issue (patent claim validity) involved in the dispute before the district court.  One purpose of the reexamination procedure is to eliminate trial of that issue (when the claim is canceled) or to facilitate trial of that issue by providing the district court with the expert view of the PTO (when a claim survives the reexamination proceeding).  Early versions of what became the reexamination statute, 35 U.S.C. §§ 301–307 (Supp. V 1981), expressly provided for a stay of court proceedings during reexamination.

<u>Gould v. Control Laser Corp.</u>, 705 F.2d 1340, 1342 (Fed. Cir. 1983).

Finally, the court notes that this potentially complex and lengthy litigation is at a very early stage and discovery is far from complete.  Emseal has made only a preliminary discovery request (and, that request was made after defendants had already

moved to stay these proceedings).  No depositions have been taken
or even noticed.  No substantial discovery has commenced.  That
fact also counsels in favor of granting a (limited) stay of this
litigation.  See generally Everett Labs., Inc. v. River's Edge
Pharms. LLC, 2009 WL 4508584, *4 (D.N.J. Nov. 24, 2009) ("One of
the most critical factors in determining whether to stay
litigation pending the outcome of a reexamination proceeding is
the stage of the litigation.  Courts stress the importance of the
stay being sought early in the litigation.").


### Conclusion

The issuance of a limited stay of these proceedings will not
unduly prejudice or tactically disadvantage Emseal.  As
importantly, it will likely simplify the issues in question and
streamline trial of the case, thereby employing the limited
resources of both the parties and the court in a more efficient
manner.  Moreover, this case is plainly at a very early stage, so
the parties have yet to expend substantial time or resources
conducting discovery or addressing the merits of Emseal's
(potentially invalid) patent claims.


For the foregoing reasons, as well as those set forth in
defendants' memoranda (documents no. 30-1 and 41), defendants'
motion to stay these proceedings (document no. 30) is granted.

This litigation, including all discovery and motion practice, shall be stayed until further order of the court.

In 90 days, the parties shall file with the court a joint status update, apprising the court of the status (to the extent it is known) of the reexamination process.  When the USPTO has completed its review of the '495 patent, the parties shall notify the court.  If the USPTO has not completed that process within six months – that is, by **September 30, 2015** – Emseal may, but is not required to, petition the court to lift the stay.  Defendants may file an objection to any such motion within 30 days of its filing.

The following pending motions are denied, without prejudice to refiling once the stay is lifted:

1.  Motion to Dismiss for Failure to State a Claim (document no. 14).

2.  Motion to Strike (document no. 15).

3.  Motion to Dismiss for Failure to State a Claim (document no. 19).

4.  Motion to Strike (document no. 20).

5.  Motion to Dismiss Count Three of Defendants' Counterclaims (document no. 47).

Finally, in light of the court's order granting defendants' motion to stay these proceedings (including all discovery),

defendants' motion to stay discovery (document no. 33) is denied as moot.

**SO ORDERED.**

_____
Steven J. McAuliffe
United States District Judge

March 27, 2015

cc:  James E. Hudson, III, Esq.
     Gary E. Lambert, Esq.
     Robert R. Lucic, Esq.
     John H. Mutchler, Esq.
     Brian D. Thomas, Esq.

11